# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

In Re:   )
  )    **JUDGE RICHARD L. SPEER**
Steve Campton   )
  )    Case No. 08-3244
    Debtor(s)   )
  )    (Related Case: 08-32254)
Steve Campton   )
  )
    Plaintiff(s)   )
  )
      v.   )
  )
United States Department of Education   )
  )
    Defendant(s)   )

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability of Debt. At issue at the Trial was whether the Debtor was entitled to receive a discharge of a student-loan obligation pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). At the conclusion of the Trial, the Court deferred ruling on the matter so as to afford time to thoroughly consider the matter. The Court has now had the opportunity to consider the arguments made by the Parties, the evidence presented at the Trial, as well as the applicable law. Based upon this review, the Court, for the reasons stated herein, declines to grant the relief requested by the Debtor.

**Steve Campton v. United States Department of Education**
**Case No. 08-3244**

## FACTS

On May 2, 2008, the Plaintiff/Debtor (hereinafter the "Debtor"), filed a voluntary petition in this Court for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the Debtor brought this adversary proceeding against the United States Department of Education (hereinafter the "DOE") seeking a discharge of his student-loan obligation pursuant to 11 U.S.C. § 523(a)(8). At the Trial held on this matter, the Parties stipulated that, as of October 1, 2008, the Debtor owed the DOE the sum $12,536.49 on his educational debt. This obligation was first incurred in March and April of 1987, when the Debtor borrowed $3,644.00 and $3,700.00 respectively to study electronics at the National Education Center in Phoenix, Arizona.

The Debtor is 45 years of age, married, and the stepfather of two teenage sons. The Debtor is currently unemployed, having worked intermittently over the past eight years. At the present time, he receives $680 per month in unemployment benefits. The Debtor's wife is employed, working 40 hours per week at an hourly rate of $17.32.

The Debtor's wife owns the family home. Her income is used to pay the majority of the household expenses. However, the Debtor, when employed and now through his unemployment benefits, helps by contributing some of his income to the household expenses. The Debtor also pays for his personal expenses.

Upon graduation from the National Education Center, the Debtor obtained employment in the electronics field, but left his job, and the field in which he obtained his degree, for employment in the construction industry, explaining that it paid higher wages. Since incurring the student-loan debts, the number of voluntary payments the Debtor has made toward the obligations is negligible. Interest and penalties have accrued on the obligations as a result.

Page 2

## DISCUSSION

This cause is before the Court on the Debtor's Complaint to Determine the Dischargeability of Debt. Determinations concerning the dischargeability of particular debts are deemed to be "core proceedings." 28 U.S.C. § 157(b)(2)(1). And, as a "core proceeding," Congress has conferred upon this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

Since 1976, debts incurred by a debtor to finance a higher education are generally excepted from discharge. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 449, 124 S.Ct. 1905, 1911-12, 158 L.Ed.2d 764 (2004). However, in limited circumstances, student-loan obligations may still be discharged in bankruptcy where an affirmative showing is made by the debtor that the repayment of the loan would cause an "undue hardship." As now set forth in § 523(a)(8):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
> >
> > > (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > >
> > > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> > >
> > > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

The term "undue hardship" is not defined as it is used in § 523(a)(8). Notwithstanding, it is established that, at the very least, "undue hardship" denotes a heightened standard, requiring that the debtor show exceptional circumstances that surpass the garden-variety financial hardship experienced by most debtors who seek bankruptcy relief. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005). Consequently, the argument, such as that made by the Debtor in this matter, that a student-loan discharge is necessary to enable one to get on with their life is, standing alone, legally insufficient. For student loans, the Congress of the United States chose to subordinate a debtor's fresh start to the repayment of the student loan obligation.

To determine whether a debtor meets the heightened standard of "undue hardship," the Sixth Circuit Court of Appeals held, in the case of *Oyler v. Educational Management Credit Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005), that a court must apply what is referred to as the Brunner Test, named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir. 1987). According to this test, a student-loan may be discharged for "undue hardship" only if the following three elements are shown to exist:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;

> (3) That the debtor has made good faith efforts to repay the loans.

*Id.* at 399-400. The Debtor bears the burden of establishing the existence of each of these elements by a preponderance of the evidence. *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3rd Cir. 1996).

Page 4

As to the first element of the Brunner Test, the ability to repay the loan, expenses presently incurred by the Debtor demonstrate that he has sufficient financial resources at his disposal to enable him to repay his student-loan obligation. The first element of the Brunner test also concerns a debtor's present ability to pay and whether the repayment of the student loan would impair the debtor's ability to maintain a minimal standard of living. While a minimal standard of living does not mandate that a debtor live in poverty to qualify for a discharge of their student-loan obligation, it does mean that the debtor is expected to do some financial belt-tightening and forego amenities to which he may have become accustomed. *Lowe v. ECMC (In re Lowe)*, 321 B.R. 852, 857-58 (Bankr.N.D.Ohio 2004). The evidence in this case does not support that the Debtor has done the requisite degree of belt-tightening.

At the Trial, the Debtor acknowledged that he is able to allocate his financial resources to pay for amenities such as a boat, cable television, and cigarettes. On a monthly basis, these expenses total $380.00, representing a $160.00 per month boat payment, a monthly cable charge of $100.00, and $120.00 a month to pay for cigarettes. Even the partial reallocation of some of these expenditures would enable the full payment of the Debtor's $12,536.49 student-loan obligation. For example, the allocation of $250.00 per month over five years equates to $15,000.00.

Although, the Debtor may find it desirable to allocate his financial resources to pay for these categories of expenses, the Debtor's continued expenditure for these items can hardly be considered necessary to maintain a minimal standard of living. In this way, the Court is not of the opinion that when the Congress of the United States enacted § 523(a)(8), it envisioned that a debtor could discharge a student-loan obligation, thereby placing liability for the debt upon the taxpayers, while continuing to pay for amenities such as boats, cable television and cigarettes. See *Educational Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 325 (4th Cir. 2008) (finding that monthly payments of $75 for internet, $80 for cell phones, $60 for satellite television, $68 for a YMCA

Page 5

membership, and an undisclosed amount for cigarettes are not expenditures normally necessary to maintain a minimum standard of living for purposes of § 523(a)(8)).

The result is the same for the second prong of the Brunner test. This prong requires that a debtor show that additional circumstances exist which indicate that his or her distressed financial state will likely persist for a significant portion of the repayment period. Previously, this Court elaborated on this requirement, stating as follows:

> The center of gravity of the second prong of the Brunner test is permanency or, what can be termed, an involuntary inability to improve one's financial circumstances. Stemming from this principle, this Court has consistently espoused the maxim . . . that, (1) a debtor's distressed state of financial affairs must be the result of events which are clearly out of their control, and (2) the debtor must have done everything within their power to improve their financial situation. Although not a *sine quo non*, an often used explanation, and a common paradigm for an "undue hardship" case, is the existence of a permanent disability, whether physical and/or mental.

*Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 871-72 (Bankr. N.D.Ohio 2004) (internal citations omitted). Consistent with this approach, many of the reported cases addressing the second element of the Brunner Test have looked to the existence of a serious medical condition or some other unique circumstance to warrant a finding of "undue hardship." 4 Collier on Bankruptcy ¶ 523.14[2] (15th ed. rev.2005).

Arguably, in this case, the Debtor's distressed financial circumstances may be presently the result of an uncontrollable event, the Debtor becoming unemployed. Still, there remains a large gap in the evidence necessary to sustain the Debtor's burden under the second prong of the Brunner Test. Particularly, no evidence was offered by the Debtor that his unemployment would likely persist for a significant portion of the student-loan repayment period – *e.g.*, 10 to 20 years.

Page 6

For example, nothing indicated that the Debtor suffers from any mental and/or physical maladies that would cause him to be permanently unemployable. To the contrary, the Debtor testified that he is actively seeking employment, and that he expected to return to work within the next few months. It is also safe to assume that the Debtor has many years of productive employment ahead of him, being only 45 years of age.

Yet, even assuming for the moment that the Debtor had sustained his burden under the first and second prongs of the Brunner Test, an "undue hardship" discharge of his student-loan obligation would still be inappropriate. The third and final element of the Brunner Test requires a debtor to show that he made a good faith effort to repay the student loans. The purpose of this requirement is to place a burden on a debtor to act responsibly toward the creditor financing the debtor's education considering that educational loans are extended without consideration for he debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr. N.D.Ohio 2003).

Based on its focus on a debtor's efforts at repayment, inherent in any good-faith analysis under the third prong of the Brunner Test is whether and the extent to which the debtor actually made any voluntary payments on the obligation. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 779 (Bankr. N.D.Ohio 2007). In this case, however, while he may have had his tax refunds appropriated, the evidence is devoid of any meaningful attempt on the part of the Debtor to voluntary repay his student loans. Simply put, over a period extending more than 20 years, the Debtor never (or rarely) ever wrote a check to pay for his student-loan debt. This is especially problematic given that, after he incurred the debts, he had extended periods of employment where he earned a sufficient salary to enable him to make payments on the student loans. Also problematic, the Debtor received the benefit of his educational debt, obtaining a degree, and also initially, obtaining a job in his vocational field.

Page 7

**Steve Campton v. United States Department of Education**
**Case No. 08-3244**

In conclusion, the Court, for all these reasons, cannot find that the Debtor has sustained his evidentiary burden with respect to the three prongs of the Brunner Test. As such, the Court is unable to find that the Debtor qualifies for an "undue hardship" discharge of his educational debt under § 523(a)(8). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of both parties, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

*ORDERED* that, pursuant to 11 U.S.C. § 523(a)(8), the claim held by the Defendant, the United States Department of Education, against the Plaintiff/Debtor, Steve Campton, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.

Dated: May 5, 2009

Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 5th day of May 2009 to:

William J. Edwards
United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604-2624

Steve Campton
1520 Park St
Findlay, OH 45840

_____/s/Jennifer S Huff_____
Deputy Clerk, U.S. Bankruptcy Court